FILED by __NF__ D.C.

Sep 29, 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

20-60103-CR-GAYLES/STRAUSS

CASE NO. _____

18 U.S.C. § 371
18 U.S.C. § 981(a)(1)(C)

UNITED STATES OF AMERICA

vs.

ANDREW DALE LEDBETTER,

      Defendant.
_____/

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times material to this Information:

1.     1 Global Capital LLC ("1 Global") was a limited liability company with its principal place of business in Hallandale Beach, Florida.

2.     Individual #1 acted as the Chief Executive Officer and Chairman of 1 Global from at least in or around 2013 through in or around July 2018.

3.     **ANDREW DALE LEDBETTER** was an attorney licensed in the State of Florida who worked at Law Firm #1. **LEDBETTER** acted in a fundraising capacity at 1 Global beginning in or around 2015 and continuing through in or around July 2018.

4.     Jan Douglas Atlas was an attorney licensed in the State of Florida and was a partner at Law Firm #1. Atlas purported to serve as outside legal counsel for 1 Global.

5.     Steven Allen Schwartz was a consultant and Director of 1 Global from in or around 2014 through in or around July 2018. Schwartz was described as 1 Global's Chief Operating

Officer ("COO") according to certain marketing materials used to raise money for 1 Global. Schwartz was also the nominal trustee for Individual #1's art trust and Individual #1's family trust, the latter of which effectively owned 1 Global.

6.    Alan G. Heide was employed at 1 Global from in or around February 2014 through in or around August 2017. Heide was initially employed as 1 Global's Chief Financial Officer and later as Executive Vice President and Director, Syndicate Partner Relations.

## CONSPIRACY TO COMMIT WIRE FRAUD AND SECURITIES FRAUD
### (18 U.S.C. § 371)

From in or around 2015, through in or around July 2018, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**ANDREW DALE LEDBETTER,**

did knowingly and willfully combine, conspire, confederate, and agree with Individual #1, Jan Douglas Atlas, Steven Allen Schwartz, Alan G. Heide, and other persons known and unknown to the United States Attorney, to commit certain offenses against the United States, namely:

    a. wire fraud, that is, to knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing such scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343; and

    b. securities fraud, that is, to knowingly, willfully, and unlawfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of national

securities exchanges, directly and indirectly, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, and (i) employ a device, scheme and artifice to defraud; (ii) make untrue statements of material fact and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) engage in acts, practices, and courses of business which would and did operate as a fraud and deceit upon any person, in connection with the purchase and sale of securities; in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5.

## PURPOSE OF THE CONSPIRACY

7. It was a purpose of the conspiracy for the defendant and his conspirators to unlawfully enrich themselves by obtaining money from investors using (a) legal opinion letters containing false and fraudulent representations about material facts; (b) false and fraudulent representations to investors concerning the nature of the 1 Global investment; and (c) false and fraudulent statements regarding the finances, operation, and profitability of 1 Global, so that the defendant and his conspirators could profit from the unlawful sale of these investments and misappropriate investors' funds for their own personal use and enjoyment.

## MANNER AND MEANS

The manner and means by which the defendant and his conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

8. Individual #1 owned and controlled 1 Global through certain entities that he also controlled, including a purported family trust, for which Steven Allen Schwartz served as trustee. Individual #1 had ultimate decision-making authority at 1 Global and was actively involved in

3

financial matters, marketing, payments, hiring and firing decisions, and interactions with persons and entities who provided funding to 1 Global.

9. 1 Global purportedly operated as a lending business to merchants, providing short-term loans referred to as merchant cash advance ("MCA") loans. 1 Global obtained funds from investors (sometimes referred to as "lenders" or "syndicate partners") in the form of investment contracts with the promise of a return on the investors' investments. Substantial questions arose during the operation of the business as to whether 1 Global was offering or selling a security and whether the investment offering was required to be registered with the U.S. Securities and Exchange Commission. These questions were raised by investors, investment advisors, and regulators. **ANDREW DALE LEDBETTER** and Jan Douglas Atlas acted as outside counsel for 1 Global and knew that if 1 Global's investment offering were determined to be a security, it would undermine the ability of 1 Global to raise funds from retail investors and to continue to operate without substantial additional expenses and reporting requirements. Such a classification would undermine the profits and fees that Individual #1, **LEDBETTER**, and others would be able to obtain from 1 Global's operations.

10. Individual #1, **ANDREW DALE LEDBETTER**, and Jan Douglas Atlas first solicited advice from an attorney, a former colleague of **LEDBETTER** and Atlas, on the issue of whether 1 Global's investment offering was a security. The attorney communicated to **LEDBETTER** and Atlas that the offering was a security, but did not put the opinion in writing. Upon hearing this, Individual #1 demanded a return of fees paid for these legal services because he did not want to pay for an opinion that 1 Global's offering was a security. Following this incident, Individual #1 and **LEDBETTER** consulted with Jan Douglas Atlas about how to address the issue of whether 1 Global's investment offering constituted a security. Individual #1 made

4

clear to Atlas that they wanted legal cover in order to continue to operate without adhering to the registration requirements of federal and state securities laws.

11. Thereafter, at the request of Individual #1, Jan Douglas Atlas authored an opinion letter dated May 17, 2016 ("May 17th Opinion Letter"), that stated in substance that the 1 Global offering was not a security and not subject to the federal securities laws or registration requirements. **ANDREW DALE LEDBETTER** was copied on the letter. **LEDBETTER** knew at the time of this letter that various aspects of how the 1 Global investment actually worked were omitted or described inaccurately in the letter in order to achieve the opinion that Individual #1, **LEDBETTER**, and their conspirators desired. **LEDBETTER** knew, for example, that the investment was not, in reality, a nine month investment but was instead longer in duration; that the automatic renewal aspect of the investment was omitted; and that in reality the investment was being targeted toward retail, non-sophisticated investors (such as Individual Retirement Account ("IRA") account holders). **LEDBETTER** and his conspirators then used the May 17th Opinion Letter in order to give legal cover to 1 Global and its employees and agents to attempt to avoid application of the federal and state securities laws.

12. In or around 2016, **ANDREW DALE LEDBETTER** became aware of two opinion letters authored by attorneys at Law Firm #2 that were provided to 1 Global. The first opinion letter, dated June 20, 2016, stated that the 1 Global offering was a security, that the interest rates charged by 1 Global likely violated Florida's usury laws, and that the failure of 1 Global to pay Florida documentary stamp taxes could prevent 1 Global from successfully bringing collection actions to enforce the MCAs in Florida courts. The second opinion letter, dated July 6, 2016, provided guidance on how 1 Global could obtain compliance with the federal securities laws, including by potentially meeting the requirements of Rule 506(b) of the Securities Act of 1933. This would mean, among other things, that due to "integration" of the prior illegal offering of the

1 Global security to investors, 1 Global would likely have to engage in a six-month cessation of capital raising activities and would thereafter be able to offer the investment only to "accredited" as opposed to retail investors. 1 Global would have had to effectively cease operations for at least six months to comply with this advice. **LEDBETTER**, from conversations with Individual #1, understood that Individual #1 had no intention of following this legal advice.

13. **ANDREW DALE LEDBETTER**, Individual #1, and Jan Douglas Atlas had conversations in and around August 2016 to determine how to continue to claim that the 1 Global investment offering was not a security. Individual #1, Steven Allen Schwartz, Alan G. Heide, Jan Douglas Atlas, and **LEDBETTER** agreed not to disclose to investors or the public the advice from Law Firm #2, and any advice contrary to the false Atlas opinion letter, as they wanted legal cover for the ongoing operations of 1 Global. The conspirators, including **LEDBETTER**, understood this to mean that Individual #1 wanted legal cover regardless of the truth and that Individual #1 was in reality encouraging **LEDBETTER**, Atlas, Heide, Schwartz, and others to advance the false narrative that 1 Global's offering was a safe investment, and not a security.

14. At the request of Individual #1, Jan Douglas Atlas authored a second legal opinion letter, dated August 25, 2016 ("August 25th Opinion Letter"), that essentially repeated the false and misleading statements made in the May 17th Opinion Letter, including that the 1 Global investment opportunity was a nine month investment. This letter intentionally omitted reference to the automatic renewal provision and other aspects of the investment that would undermine the legal opinion. The letter also falsely stated that the investment was being offered only to sophisticated investors. **ANDREW DALE LEDBETTER** knew that the 1 Global investment offering fell squarely within the definition of a security under the federal securities laws and was required to be registered. **LEDBETTER** also knew that the concept of "integration" meant that the continued offering as a nine month note would not preclude the application of the securities

laws. **LEDBETTER** understood that the August 25th Opinion Letter inaccurately described or omitted aspects of the investment in order to give Individual #1 and other conspirators false legal cover to continue to conduct business unabated.

15. 1 Global employees and agents, including Individual #1 and **ANDREW DALE LEDBETTER**, used the August 25th Opinion Letter to continue to raise money illegally, including via communications transmitted in interstate commerce and the mails, including by the transmission of payments and communications to and from investors located in various states, with 1 Global employees and agents located in Florida. **LEDBETTER** repeated, in numerous pitches and communications to investment advisors and investors, that the investment was not, in reality, a security, and failed to disclose material risk factors, knowing that 1 Global's investors would rely on his false and misleading statements.

16. **ANDREW DALE LEDBETTER** received a commission override of .75 to two percent on all funds raised from 1 Global investors. **LEDBETTER** received commissions on investors whom he directly recruited, commissions on investments brought in by his recruits, and commissions when investments "rolled over" or were renewed. **LEDBETTER** was personally involved in raising more than $100 million in investor funds that went to 1 Global, through his own pitches and through investment advisors he attracted to 1 Global. Over the years, **LEDBETTER** received approximately $3 million from 1 Global, the majority of which was for commissions. **LEDBETTER** routinely held himself out to investors and investment advisors as outside counsel to 1 Global. **LEDBETTER** also personally vouched for 1 Global in pitches and marketing materials. However, **LEDBETTER** did not disclose the commissions that he received from 1 Global to investors. Nor did **LEDBETTER** disclose these payments to Law Firm #1.

17. **ANDREW DALE LEDBETTER** provided payments to Jan Douglas Atlas at or around the time that Atlas executed the May 17th and August 25th Opinion Letters, and thereafter,

7

which came from a percentage of commissions that **LEDBETTER** received upon the money raised from new investors. The funds paid to Atlas by **LEDBETTER** totaled approximately $627,000 and were paid to Atlas's personal checking account. The funds paid to Atlas were not disclosed to Law Firm #1. **LEDBETTER** and Atlas knew that they were required to disclose and share with Law Firm #1 all fees paid by clients of the firm. Although **LEDBETTER** did not inform Law Firm #1 about these side payments, he did inform Individual #1 about them.

18. In addition to his involvement in failing to truthfully disclose securities-based risk factors, concealing Law Firm #2's opinion letters, and concealing commission payments, **ANDREW DALE LEDBETTER** made material misrepresentations to investors and others regarding the status of 1 Global's financial statements. Specifically, **LEDBETTER** disseminated marketing materials via email and mail, and through interstate wire communications, that falsely claimed that 1 Global's financials were audited by an independent, external auditing firm, when in truth and in fact, **LEDBETTER** well knew that 1 Global's financials had never been audited.

19. Individual #1 expressed a preference for retail investors over hedge fund and other sophisticated investors. When investors or investment advisors asked for more detailed financial statements and information concerning the status of the audit, Individual #1 made affirmative misrepresentations; for example, Individual #1 claimed that every month, an audit firm confirmed the accuracy of 1 Global's rate of return formula and profit. Individual #1 also made false and misleading representations that, to the extent that financials and audits were not completed, they were working on them and they would be done soon. **ANDREW DALE LEDBETTER** and other conspirators involved in marketing 1 Global's investment offerings passed on these false and misleading representations to investors and investment advisors.

20. As time went on, **ANDREW DALE LEDBETTER** also learned that Individual #1 was using large amounts of 1 Global investor funds for purposes not authorized by 1 Global's

8

investment contracts, and not disclosed to investors. In addition, due to, among other things, issues with state securities regulators, 1 Global had increasing difficulties in raising capital in 2018. **LEDBETTER** and his conspirators nevertheless continued to conceal the truth from investors.

## OVERT ACTS

In furtherance of the conspiracy and to achieve the objects and purpose thereof, at least one conspirator committed and caused to be committed in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1. On or about January 20, 2016, Individual #1 transmitted an email from his account at 1 Global to **ANDREW DALE LEDBETTER**, copying Jan Douglas Atlas, Alan G. Heide, and another 1 Global employee, responding to a notification that an IRA account had invested $165,000, and another individual had invested $25,000, in which Individual #1 stated, "Nice . . . Love [the investment advisors who brought in these people] . . . Need 14 more [of them] and I'll be in Pig Heaven!"

2. On or about May 24, 2017, **ANDREW DALE LEDBETTER** transmitted an email from his account, ledbetter.dale1@gmail.com, in the Southern District of Florida, to H.H., in Arkansas, containing a pitch deck for 1 Global, which falsely and fraudulently represented that an "[e]xternal [i]ndependent CPA firm audits [1 Global's] financial statements annually," and that "accounting and auditing services are provided [to 1 Global] by [Accounting Firm #1]."

3. On or about May 24, 2017, **ANDREW DALE LEDBETTER** transmitted an email from his account, ledbetter.dale1@gmail.com, to H.H., in Arkansas, in which **LEDBETTER** stated that "There are no audited financials. The lenders are not buying equity in the company. Their loan is collateralized by hundreds of merchant cash advances. The company gets a personal guarantee from the owner and a UCC is obtained on the assets of the company."

4. In or around December 2017, **ANDREW DALE LEDBETTER** traveled from the Southern District of Florida to Pennsylvania to give an oral presentation regarding 1 Global's offering to an audience of more than approximately 200 investors, many of whom were elderly, in which **LEDBETTER** falsely stated that 1 Global's offering was not a security.

5. On or about December 7, 2017, **ANDREW DALE LEDBETTER** sent a text message to Individual #1, Jan Douglas Atlas, and other 1 Global employees, stating, "Absolutely our best meeting yet. 240 people. Great questions, great conversations after the meeting . . . a large number of people commit[ted] on the spot that they will become lenders . . . Very exciting!"

6. On or about June 12, 2018, **ANDREW DALE LEDBETTER** wrote check number 538 from his personal account at TD Bank, ending in 9354, to Jan Douglas Atlas, in the amount of approximately $36,120, in which he wrote "fees" on the memo line.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE
## (18 U.S.C. § 981(a)(1)(C))

1. The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **ANDREW DALE LEDBETTER**, has an interest.

2. Upon conviction of Title 18, United States Code, Section 371, as alleged in this Information, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offense of conviction pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

      b. has been transferred or sold to, or deposited with, a third party;

      c. has been placed beyond the jurisdiction of the court;

      d. has been substantially diminished in value; or

      e. has been commingled with other property which cannot be divided without difficulty.

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c).

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

LISA H. MILLER
JERROB DUFFY
ASSISTANT UNITED STATES ATTORNEYS

ROBERT ZINK
CHIEF
FRAUD SECTION, CRIMINAL DIVISION
UNITED STATES DEPARTMENT OF JUSTICE

L. RUSH ATKINSON
ASSISTANT CHIEF
ELIZABETH YOUNG
TRIAL ATTORNEY
FRAUD SECTION, CRIMINAL DIVISION
UNITED STATES DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO._____ |
| v. | |
| ANDREW DALE LEDBETTER, | **CERTIFICATE OF TRIAL ATTORNEY*** |
| **Defendant.** | |
| _____ / | **Superseding Case Information:** |

**Court Division**: (Select One)

   ___ Miami     ___ Key West
    X  FTL       ___ WPB       ___ FTP

New Defendant(s)   Yes ___ No ___
Number of New Defendants  ___
Total number of counts   ___

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:   (Yes or No)   No
   List language and/or dialect   _____

4. This case will take   0   days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)    (Check only one)

   | | | | | |
   |---|---|---|---|---|
   | I | 0 to 5 days | X | Petty | |
   | II | 6 to 10 days | ___ | Minor | |
   | III | 11 to 20 days | ___ | Misdem. | |
   | IV | 21 to 60 days | ___ | Felony | X |
   | V | 61 days and over | | | |

6. Has this case been previously filed in this District Court?   (Yes or No)   No
   If yes:
   Judge:_____   Case No._____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)   No
   If yes:
   Magistrate Case No.   _____
   Related Miscellaneous numbers:   _____
   Defendant(s) in federal custody as of   _____
   Defendant(s) in state custody as of   _____
   Rule 20 from the District of   _____
   Is this a potential death penalty case? (Yes or No)   No

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?     Yes ___    No  X

_____
LISA H. MILLER
ASSISTANT UNITED STATES ATTORNEY
COURT ID NO. A5502054

*Penalty Sheet(s) attached     REV 4/8/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** ANDREW DALE LEDBETTER

**Case No:** _____

Count #: 1

Conspiracy to Commit Securities Fraud and Wire Fraud

Title 18, United States Code, Section 371

**\*Max. Penalty:** Five years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| ANDREW DALE LEDBETTER, | ) | |
| | ) | |
| _Defendant_ | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
_Defendant's signature_

_____
_Signature of defendant's attorney_

JEFFREY SLOMAN, ESQ.
_Printed name of defendant's attorney_

_____
_Judge's signature_

_____
_Judge's printed name and title_